**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. MARK J. AVERY, *Defendant-Appellant*. | No. 12-35209 <br><br> D.C. No. 3:07-cr-00028-RRB <br><br> OPINION |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
May 22, 2013—Anchorage, Alaska

Filed June 18, 2013

Before: A. Wallace Tashima, Richard C. Tallman,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Habeas Corpus

The panel vacated the district court's denial of a 28 U.S.C. § 2255 motion to vacate a sentence after petitioner pled guilty to wire fraud, money laundering, and criminal forfeiture, and remanded for further proceedings.

After serving almost four years of his sentence, petitioner sought federal habeas relief, claiming his conviction and sentence were invalidated by the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), which narrowed the scope of the honest services fraud theory. The panel concluded that petitioner pled guilty only to honest services fraud and cannot be deemed to have been convicted or sentenced based on a broader charge that was not incorporated into the plea agreement and not acknowledged by petitioner as true when he pled guilty. The panel held that, because the crime to which petitioner pled guilty and for which he was incarcerated is no longer a criminal offense, petitioner's actual innocence overcomes the procedural default of his claim challenging his conviction.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Krista Hart (argued), Sacramento, California, for Defendant-Appellant.

Kyle G. French (argued), Assistant United States Attorney; Karen Loeffler, United States Attorney, Anchorage, Alaska, for Plaintiff-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

Mark Avery, former attorney and trustee of private trusts, appeals the district court's denial of his 28 U.S.C. § 2255 federal habeas corpus petition. Avery pled guilty to five counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, nine counts of money laundering, in violation of 18 U.S.C. § 1957(a), and one count of criminal forfeiture, in violation of 18 U.S.C. § 982(a)(1), and was sentenced to 102 months of imprisonment. On habeas review, Avery contends that his conviction and sentence must be vacated in light of the Supreme Court's subsequent decision in *Skilling v. United States*, 130 S. Ct. 2896, 2907 (2010), which narrowed the scope of the honest services fraud theory. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Based on the explication of the elements of the fraud offense set forth in the plea agreement and repeated by the district court when the plea was taken, we vacate the district court's dismissal of Avery's honest services fraud claim and remand for further proceedings consistent with this opinion.

## BACKGROUND

Avery served as a trustee for the *May Smith Trust*, with assets valued in excess of $100 million, and the *May and Stanley Smith Charitable Trust*, with assets exceeding $350 million. On March 6, 2007, Avery was charged by Information with engaging "in a fraudulent financing scheme in which he abused his fiduciary obligations and his position of trust to acquire over $52 million dollars through an ambiguous loan arrangement which used the *May Smith Trust* as collateral." In furtherance of the fraudulent scheme, Avery executed margin loans secured by the trust assets and used the loaned funds "to purchase [a] speculative aircraft venture," to "pa[y] personal debts," and to "purchase . . . personal assets."[1] After Avery filed personal bankruptcy and his businesses collapsed, Avery defaulted on the margin loans and the lender foreclosed on the $52 million of trust collateral that secured their repayment.

To resolve his criminal charges, Avery entered into a plea agreement executed under Federal Rule of Criminal Procedure 11(c)(1)(C). By the terms of the agreement, Avery waived indictment and pled guilty to five counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, nine counts of money laundering, in violation of 18 U.S.C. § 1957(a), and one count of criminal forfeiture, in violation of 18 U.S.C. § 982(a)(1). On April 17, 2008, the district

---

[1] According to the plea agreement, these personal assets included "jet aircraft, historic World War II fighter aircraft, other antique aircraft, and recreational vehicles." The personal debts repaid included "paying off personal mortgages." Avery also used the funds to "provide free jet service to [himself], the other trustees of the *May Smith Trust* and the *May and Stanley Smith Charitable Trust*, their friends and families."

court sentenced Avery to 102 months of imprisonment and ordered Avery to pay $52,125,000 in restitution.  Because he waived his appellate rights in the plea proceedings, Avery filed no direct criminal appeal.

But after serving almost four years of his sentence, on February 11, 2011, Avery sought habeas relief in the District of Alaska, claiming his conviction and sentence were invalidated by the Supreme Court's decision in *Skilling*.  The district court denied Avery's habeas petition, concluding that Avery had "procedurally defaulted [his] claim by failing to raise it on direct review" and could not overcome that default by establishing actual innocence or cause and prejudice. Avery immediately appealed.  On appeal, Avery argues that the district court erred in concluding that his honest services fraud challenge was procedurally defaulted.    In the alternative, Avery contends that he can establish actual innocence or cause and prejudice to overcome any default.

## STANDARD OF REVIEW

A district court's denial of a petition for writ of habeas corpus is reviewed de novo.  *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc).  On habeas review, a district court's findings of fact are reviewed for clear error. *Sanchez v. United States*, 50 F.3d 1448, 1452 (9th Cir. 1995).

## DISCUSSION

In *Skilling*, the Supreme Court limited the scope of the honest services fraud offense under § 1346, holding that the statute only criminalized fraudulent schemes that involved bribery or kickbacks.  130 S. Ct. at 2928.  In his habeas petition, Avery contends that his conviction was premised on

an honest services fraud theory based solely on a conflict of interest through breach of his fiduciary duties, without any bribery or kickback allegations.  As a result, Avery argues that he is innocent of the crimes for which he stands convicted and is entitled to habeas relief.

Avery concedes that he failed to raise his innocence claim on direct appeal, challenging his conviction for the first time on collateral review.  A defendant "has procedurally defaulted a claim by failing to raise it on direct review, [and] the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted).  "Actual innocence" is an equitable remedy that permits a petitioner to obtain collateral review of a procedurally defaulted claim.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To invoke the actual innocence exception, Avery must show that in light of all of the evidence, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id*.  In this context, "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).

In evaluating whether Avery is actually innocent of his offense of conviction, sufficient to overcome a procedural default, we must first identify the offenses to which Avery pleaded guilty to committing.  Although the government concedes, in light of *Skilling*, that Avery is actually innocent of the honest services fraud offenses charged in the Information, the government argues that Avery was nonetheless properly convicted of devising a scheme or artifice to defraud the *May Smith Trust* and May Wong Smith of money or property.  The government insists that, in the

Information, Avery was charged more broadly with violating not only 18 U.S.C. § 1346, which defines honest services fraud, but also 18 U.S.C. § 1343, which prohibits all forms of wire fraud, including money-or-property based wire fraud. In executing the plea agreement, the government argues that Avery agreed to plead guilty to five counts of "Wire Fraud, in violation of [both] § 1343 and § 1346."

The language contained in the Information and plea agreement, citing both §§ 1343 and 1346, is not dispositive. Section 1346, which defines honest services fraud, is not a standalone criminal offense, but must be charged in conjunction with 18 U.S.C. §§ 1341 or 1343 as the means or theory by which the fraud was committed. Section 1346 merely modifies the definition of "scheme or artifice to defraud" included in §§ 1341 and 1343 to prohibit one particular manifestation of mail or wire fraud—abuse of a position of trust which the law recognizes as depriving another of the intangible right of honest services. *See, e.g.*, *United States v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012); *United States v. Rybicki*, 354 F.3d 124, 132–45 (2d Cir. 2003) (en banc). As a result, to charge a defendant with committing honest services fraud, the government is required to include in the charging document references to both §§ 1343 (or 1341) and 1346. Contrary to the government's contentions, the citation to § 1343 in Avery's Information and plea agreement does not demonstrate that Avery was convicted of both honest services fraud and money-or-property based wire fraud. To make that determination, one must look to the actual language to which Avery agreed in his plea.

The government also argues that the descriptive language contained in the Information is not limited to allegations of

honest services fraud but instead can be construed to support allegations of both honest services fraud and money-or-property fraud.    True enough.    Paragraph 15 of the Information states that Avery "devised or intended to devise a scheme and artifice to defraud the *May Smith Trust* and May Wong Smith of their money, property, and intangible right to the honest services of a trustee."  Paragraph 26 of the Information alleges that "Avery, for the purpose of executing and attempting to execute [a] . . . scheme to defraud the *May Smith Trust* and May Wong Smith, and to obtain money and property by means of depriving them of their intangible right of honest services, did knowingly transmit . . . electronic mail communications . . . directing that funds be wired to Avery's business accounts."

But while this language is compelling, it must be read in conjunction with the actual provisions of the plea agreement, which specify the elements of the offenses to which Avery pled guilty to committing and the underlying acts he admitted to establish his guilt.   No portion of the plea agreement referenced money-or-property based wire fraud.    The language in the plea agreement differs from the broader language of the Information.   Instead, the elements of the offense set forth in the plea agreement were only sufficient to establish an honest services fraud violation.   In the plea agreement, the government defined the elements of the crime of conviction as follows:

> First, the defendant made up a scheme or plan
> to defraud the *May Smith Trust* of its right to
> his  honest  services[;]  Second,  that  the
> defendant acted with the intent to deprive the
> *May Smith Trust* of its right to honest services
> as a trustee; Third[,] the defendant cause[d] a

wiring(s) to occur in furtherance of the
scheme or plan in interstate commerce.

Additionally, in the plea agreement, the predicate crime
underlying the money laundering charges was defined as
"breach of fiduciary duty and denial of honest services."

A comprehensive review of the plea agreement, and the
plea colloquy to which Avery swore in open court,
demonstrates that Avery pled guilty only to honest services
fraud. In pleading guilty, Avery did not admit to money-or-
property based wire fraud, and cannot be deemed to have
been convicted or sentenced in response to the broader
charge, despite it being mentioned in the Information. As we
have stated in other contexts, plea agreements are contracts,
and are "premised on the notion that the negotiated guilty
plea represents a bargained-for quid pro quo." *United States
v. Escamilla*, 975 F.2d 568, 571 (9th Cir. 1992) (internal
quotation marks omitted). In the present case, the
government only bargained for an honest services fraud
conviction and failed to allege a money-or-property based
wire fraud violation anywhere other than in the charging
document.

While there may be language in the Information that
broadly references money-or-property based fraud, the
government failed to incorporate those specific allegations
into the plea agreement and did not elicit from Avery
anything but a plea of guilty to honest services fraud. In
enforcing a plea agreement, we are bound to construe any
ambiguities or inconsistencies "in favor of the defendant,
ordinarily placing on the government responsibility for any
lack of clarity." *United States v. Franco-Lopez*, 312 F.3d
984, 989 (9th Cir. 2002) (internal citations and quotation

marks omitted).   The government cannot seize upon convenient language contained in the Information to substantiate a broader charge that was not incorporated into the plea agreement and not acknowledged by Avery as true in conjunction with the entry of his guilty plea.

Our conclusion is bolstered by the statements made during Avery's plea colloquy.  At the change of plea hearing, in stating the elements of the offense, the court reiterated the limited elements contained in the plea agreement.   These elements were simply those required to establish an honest services fraud offense without reference to money-or-property based fraud.[2]  Throughout the plea proceedings, the government pursued an honest services fraud theory of prosecution.   Only after realizing, in light of *Skilling*, that Avery stands convicted of an offense that is no longer criminal did the government fall back on the alternative money-or-property based wire fraud allegations.   The government cannot unilaterally modify the plea agreement to incorporate additional legal theories to support the charges

---

[2] The court described the elements of the offense as follows:

> First, that you made a scheme or plan to defraud the May Smith Trust of its rights to—to your honest services.  That's the first thing they'd have to prove and they'd have to prove that beyond a reasonable doubt.  Second, they'd have to prove that you acted with the intent to deprive the May Smith Trust of its right to honest services.  And third, that you caused a wiring or wirings to occur in furtherance of the scheme or plan.  They'd have to prove each one of those elements beyond a reasonable doubt with regard to counts one through five.  If they were able to do that, I would tell a jury they have to find you guilty.  If they were unable to do that, I'd tell a jury they had to find you not guilty.

six years after the plea agreement was entered. The government bargained for and obtained an honest services fraud conviction, and cannot now alter that bargain because its prosecution theory is no longer legally sound.

The government concedes that Avery is actually innocent of honest services fraud in light of *Skilling*, which confined the reach of the offense to "paradigmatic cases of bribes and kickbacks." 130 S. Ct. at 2932–33. Since no evidence suggests that Avery either engaged in bribery or received kickbacks, the crime to which Avery pled guilty and for which he stands incarcerated is no longer a criminal offense.[3] "A petitioner is actually innocent when he was convicted for conduct not prohibited by law." *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011). Avery has demonstrated that he is actually innocent of the crime of honest services fraud, which underlies his conviction.[4]

---

[3] We note that while Avery is innocent of honest services fraud, as that theory has been defined by the Supreme Court in *Skilling*, Avery's conduct may still constitute money-or-property based wire fraud. *See, e.g.*, *United States v. Pelisamen*, 641 F.3d 399, 406 (9th Cir. 2011). If this is the case, under the terms of the plea agreement the government may be able to reinitiate criminal proceedings against Avery under the broader money-or-property based wire fraud prosecution theory alleged in the original Information. If criminal proceedings are reinstituted, we leave it to the district court on remand to determine whether Avery's misconduct could trigger liability under core mail and wire fraud jurisprudence.

[4] Under *Bousley*, a petitioner must also demonstrate actual innocence of any "more serious charges" that "the Government has forgone . . . in the course of plea bargaining." 523 U.S. at 624; *see also Jaramillo v. Stewart*, 340 F.3d 877, 883 (9th Cir. 2003). Here, the money-or-property wire fraud allegations in the Information, which the government did not include in the language of the plea bargain, were in the same counts as the honest services allegations to which Avery pled guilty and carried the same statutory penalties. Whether or not the absence of the broader allegations

Avery's innocence is sufficient to overcome the barrier to reviewing his procedurally defaulted habeas claim.

## CONCLUSION

Accordingly, we **VACATE** the district court's dismissal of Avery's honest services fraud claim on grounds of procedural default and **REMAND** to the district court for further proceedings consistent with this opinion.[5]

---

was the result of plea negotiations, they are not such "more serious charges," and the government does not contend otherwise.

[5] Because our certificate of appealability is limited to evaluating whether Avery's habeas claim attacking the basis for his honest services fraud conviction was procedurally defaulted, we leave it to the district court on remand to determine what consequences might follow issuance of the writ granting relief under the honest services fraud theory, should the government elect to continue prosecuting this case rather than dismissing the Information.