IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK J. AVERY,<br><br>Defendant. | Case No. 3:07-cr-00028-RRB<br><br>**SUPPLEMENTARY ORDER ON § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Dockets 623 & 641)** |

## I.   INTRODUCTION

This matter comes before the Court on the U.S. Court of Appeals for the Ninth Circuit's remand order at Docket 660.  The parties have filed updated opposition and reply memoranda.[1]  For the reasons described in this order, the Court concludes that an evidentiary hearing is required for Claim 5 of the original § 2255 motion.  However, the original § 2255 motion's other claims will be denied.[2]

---

[1] Docket 677 (Opposition); Docket 683 (Reply).
[2] This order does not address or reconsider the claims from Avery's amended § 2255 motion. The Court already has ruled on those claims, *see* Docket 655, and they remain to be resolved by the Ninth Circuit on appeal.

## II.    BACKGROUND

A more complete account of this case's factual and procedural background may be found in the Court's previous orders.[3]  To briefly summarize, Defendant Mark J. Avery pleaded guilty in 2007 to several counts of honest-services wire fraud and money laundering, and this Court sentenced him to 102 months in prison.  Following the U.S. Supreme Court's decision in *Skilling v. United States*,[4] which limited the scope of the honest-services fraud statute, Avery filed a motion for habeas corpus relief under 28 U.S.C. § 2255, alleging that he actually was innocent of the crime of honest-services fraud as defined by *Skilling*.  The Court denied Avery's motion, but the Ninth Circuit vacated and remanded.[5]  On remand, the Court vacated Avery's conviction.[6]  The Government then obtained a new indictment against Avery for multiple counts of money- and property-based wire fraud, money laundering, bank fraud, and making false statements to a bank.  In 2016, a jury found Avery guilty of most of the counts, and the Court sentenced him to 160 months in prison.  The Ninth Circuit affirmed Avery's conviction on appeal,[7] and the Supreme Court denied his petition for *certiorari*.[8]

On January 28, 2020, Avery, proceeding *pro se*, filed this second motion to vacate his sentence under § 2255.[9]  The Court appointed counsel to represent Avery for the

---

[3] *E.g.*, Docket 655, *available at* 2021 WL 149676; Docket 213, *available at* 2014 WL 4546021; *see also United States v. Avery*, 719 F.3d 1080 (9th Cir. 2013); *United States v. Avery*, 747 F. App'x 482 (9th Cir. 2018).
[4] 561 U.S. 358 (2010).
[5] *Avery*, 719 F.3d at 1082–86.
[6] Docket 155.
[7] *Avery*, 747 F. App'x at 483–86.
[8] Docket 621.
[9] Docket 623.

purposes of the motion.[10]  Avery's counsel then filed an amended § 2255 motion,[11] which

the Government opposed.[12]  On January 13, 2021, the Court issued a decision denying

Avery's motion.[13]  The Court issued a Certificate of Appealability,[14] and Avery appealed.[15]

On appeal, the Ninth Circuit noted that the Court's decision only addressed

the claims raised in the amended motion Avery's counsel had filed, not the claims Avery

had raised in his original *pro se* motion.[16]  The Ninth Circuit remanded the case to this

Court "for the limited purpose of allowing the district court to consider the claims raised

in the pro se § 2255 motion in the first instance."[17]  The Government then filed an updated

---

[10]  Dockets 630 (text entry), 632, 633.

[11]  Docket 641.

[12]  Docket 651.

[13]  Docket 655.

[14]  Docket 659.

[15]  Docket 656.

[16]  Docket 665 at 1–2.

[17]  Docket 665 at 1.  It is not clear to the Court why not addressing Avery's *pro se* claims was erroneous.  The Ninth Circuit's remand order did not elaborate on its legal reasoning.  *See* Docket 665 at 1–2.  In the Court's understanding, because Avery's court-appointed counsel had filed an amended § 2255 motion, addressing Avery's *pro se* § 2255 claims would have contravened both the Federal and Local Rules of Civil Procedure.

First, under the Federal Rules of Civil Procedure, it is a "well-established doctrine" that an amended pleading supersedes the original pleading it amends.  *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992)).  The Ninth Circuit has long held that once a pleading has been amended, "the original pleading no longer performs any function and is 'treated thereafter as non-existent.'"  *Ferdik*, 963 F.2d at 1262 (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).  The Federal Rules of Civil Procedure apply to § 2255 proceedings, *see* Rule 12, Rules Governing Section 2255 Proceedings for the United States District Courts (2019), and other district courts in this circuit have applied the amended-pleading doctrine to § 2255 motions.  *E.g.*, *United States v. Shields*, No. 12-cr-00410-BLF-1, 2018 WL 4181960, at *5 (N.D. Cal. Aug. 30, 2018); *United States v. Shepard*, No. CV 15-504-TUC-CKJ, 2018 WL 2387946, at *2 (D. Ariz. May 25, 2018); *United States v. Twyman*, No. LA CR 07-01142-VBF-4, 2016 WL 4072486, at *1 (C.D. Cal. July 11, 2016).

Second, the District of Alaska Local Civil Rules—which apply to criminal cases, D. Alaska Loc. Crim. R. 1.1(b), and to habeas proceedings, D. Alaska Loc. Civ. R. 81.1—prohibit parties from proceeding *pro se* once they have appeared through counsel.  D. Alaska Loc. Civ. R. 11.1(a)(3).  Judges of this district have interpreted this rule to prohibit habeas petitioners from simultaneously proceeding on both their original *pro se* petitions and their amended petitions filed by counsel.  *See, e.g.*, *United States v. Lampkin*, No. 3:15-cr-00005-SLG-MMS-5, CM/ECF No. 1028, at *2 (D. Alaska Dec. 20, 2021).  For these reasons, the Court believed that addressing Avery's *pro se* claims would have been erroneous.  However, in accordance with the Ninth Circuit's order, the Court now addresses Avery's *pro se* claims.

opposition memorandum,[18] and Avery filed a reply memorandum authored by counsel.[19] The Court now addresses Avery's original *pro se* claims.

## III.   LEGAL STANDARDS

### A.   Section 2255—In General

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a sentence imposed by a U.S. federal court may file a motion to vacate, set aside, or correct his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[20]

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[21]  "If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted."[22]  "The district court may deny a section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a

---

[18] Docket 677.
[19] Docket 683.
[20] 28 U.S.C. § 2255(a).
[21] 28 U.S.C. § 2255(b).
[22] Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."[23]

If the court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[24] "The 'general rule' is that constitutional errors do not require reversal of a conviction, but are susceptible to harmless error review."[25] A constitutional violation usually is harmless unless, "in light of the record as a whole," the violation had "a substantial and injurious effect or influence in determining the jury's verdict."[26] "This inquiry is not a matter of pure logic, but of sensitive judgment based on the case presented to the jury by the prosecution and defense."[27]

## B.    Section 2255—Procedural Default

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review."[28] "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and

---

[23] *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989) (per curiam); *see also United States v. Rodriguez*, 49 F.4th 1205, 1213 (9th Cir. 2022) ("[A] hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims." (quoting *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)).

[24] 28 U.S.C. § 2255(b).

[25] *United States v. Montalvo*, 331 F.3d 1052, 1056–57 (9th Cir. 2003) (per curiam) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306–07 (1991)).

[26] *Id.* at 1057–58 (emphasis removed) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Certain "structural" constitutional errors are never harmless. These include total deprivations of the right to counsel at trial, a judge who was not impartial, unlawful exclusion of members of the defendant's race from a grand jury, violations of the right to self-representation at trial, and violations of the right to a public trial. *Id.* at 1057.

[27] *Id.* at 1058.

[28] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006).

actual 'prejudice', or that he is 'actually innocent.'"[29]  "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[30]  The procedural default rule does not apply to ineffective assistance of counsel allegations, however, primarily because in most cases the record is not sufficiently developed at the direct appeal stage to properly evaluate them.[31]

A similar default rule applies to issues that were raised on direct appeal and expressly rejected by the appellate court.[32]

## IV.  DISCUSSION

Avery's *pro se* § 2255 motion asserts eight violations of his constitutional rights:

> (1)  Violation of his Fifth Amendment due process rights due to lack of a "fair and impartial judge";[33]

> (2)  Violation of his Fifth Amendment double jeopardy rights;[34]

---

[29] *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).

[30] *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[31] *Id.* at 505–09.

[32] *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (per curiam) ("[Petitioner] raised this precise claim on direct appeal, and this court expressly rejected it.  Therefore, this claim cannot be the basis of a § 2255 motion."); *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975) ("Issues raised at trial and considered on direct appeal are not subject to collateral attack under 28 U.S.C. § 2255."); *see also, e.g.*, *United States v. Ramirez*, 327 F. App'x 751, 752 (9th Cir. 2009) ("[Petitioner] is barred from using a § 2255 motion to relitigate issues decided on direct appeal.").

[33] Docket 623 at 4–7.

[34] *Id.* at 8–10.

(3)     Violation of his Fifth Amendment due process rights and Fourth Amendment rights due to "unlawful[] seizure without a warrant" and "imprison[ment] without judicial process";[35]

(4)     Violation of his Sixth Amendment right to effective assistance of counsel by defense attorney Scott Dattan's alleged failure to record an interrogation;[36]

(5)     Violation of his Sixth Amendment right to effective assistance of counsel by defense attorney Michael Dieni's alleged failure to "investigate" and "present a competent defense to the jury," as well as his allegedly poor "personal interaction" with Avery;[37]

(6)     Violation of his Sixth Amendment confrontation rights "because the trial court allowed testimony from dead witnesses";[38]

(7)     Violation of his Fifth Amendment due process rights due to the inclusion of two distinct parties in a single indicted charge;[39] and

(8)     Violation of his Fifth Amendment due process rights under the facial provisions of the Jencks Act and Rule 16 of the Federal Rules of Criminal Procedure.[40]

The Court addresses each allegation in turn.

---

[35] *Id.* at 11–14.
[36] *Id.* at 15–16.
[37] *Id.* at 17–44.
[38] *Id.* at 45–46.
[39] *Id.* at 47–48.
[40] *Id.* at 49–50.

## A. Avery's Fifth Amendment Right to a "Fair and Impartial Judge"

Avery first asserts that his sentence violates his Fifth Amendment right to due process because, allegedly, the Court was so biased against him that the presiding judge "functioned as an adjunct to the prosecution." Avery alleges that:

- The Court "took no action for weeks" after the Ninth Circuit ruled that Avery had shown "actual innocence" sufficient to excuse procedural default of his first § 2255 motion, thereby "keeping an innocent man imprisoned";

- The Court denied Avery's motion for substitution of counsel, saying that Avery would never be satisfied with "any attorney";

- The Court *sua sponte* suggested a jury instruction on deliberate ignorance;

- At sentencing, the Court told Avery that he had been "delusional" to take his case to trial; and

- Other prisoners told Avery that they overheard court personnel "talking shit" about Avery after his sentencing.[41]

Avery asserts that these allegations establish that the Court "did not administer [his] case fairly and impartially, and that [he] suffered prejudice as a result." He seeks to have venue transferred out of the District of Alaska, asserting that he cannot otherwise "get a fair and impartial review of this motion."[42]

The Government opposes Avery's claim, maintaining that the record establishes a lack of any evidence of judicial bias against Avery. The Government points

---

[41] *Id.* at 4–6.
[42] *Id.* at 6.

out that the legal rulings Avery cites as evidence of judicial bias were affirmed on appeal. It further asserts that Avery has neither provided evidence of judicial bias nor demonstrated the appearance of any such bias. The Government concludes that "Avery's claims, summarized, establish nothing more [than] being dissatisfied with the court's rulings against him."[43]

The Court interprets Avery's allegation as a combined habeas claim and motion for recusal.[44] The Court first addresses Avery's motion for recusal, then addresses his habeas claim.

### (1)  Avery has not demonstrated sufficient basis for judicial recusal

The Court first concludes that Avery has not made a timely and sufficient showing that would warrant judicial recusal. Under both 28 U.S.C. § 144 and § 455, an allegation of a judge's bias or prejudice warrants recusal when "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."[45] Nothing in the record or in Avery's motion indicates that this standard is met here.

As an initial matter, several of Avery's allegations reference allegedly unfair or incorrect rulings as evidence of the Court's bias against him. But the Court's rulings in question—denying Avery's motion for substitution of counsel and issuing a deliberate-

---

[43] Docket 677 at 21–27.

[44] To the extent that Avery's § 2255 motion includes a motion for judicial recusal, his motion contravenes D. Alaska Loc. Civil Rule 7.1(e), which requires all motions to be filed separately unless a specific rule provides otherwise.

[45] *Glick v. Edwards*, 803 F.3d 505, 508 (9th Cir. 2015) (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)).

ignorance jury instruction *sua sponte*—were neither unfair nor incorrect. Avery challenged both rulings on direct appeal, and the Ninth Circuit affirmed them both.[46] These rulings are evidence of sound legal judgment by the Court, not personal bias or prejudice.

Nor do the statements Avery attributes to the Court constitute a basis for recusal. Avery has submitted no affidavits in support of his assertions. The statutory text of § 144 requires motions for recusal to be supported by a "timely and sufficient" affidavit.[47] A failure to file such an affidavit, as is the case here, defeats a party's allegation of bias.[48]

But even if Avery had submitted an affidavit averring the factual allegations in his motion, the Court still would conclude that recusal was not warranted. With respect to allegations of judicial bias, the Supreme Court has explained that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.[49]

---

[46] *Avery*, 747 F. App'x at 484–85.
[47] *See* 28 U.S.C. § 144.
[48] *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978).
[49] *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also, e.g.*, *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) ("In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" (quoting *Liteky*, 510 U.S. at 555)).

The factual allegations in Avery's motion regarding statements allegedly made by the Court or attributable to the Court, even if they were true, would evidence nothing more than a negative or critical assessment of the merits of Avery's case based on the Court's experience with the proceedings. They do not establish any "deep-seated favoritism or antagonism that would make fair judgment impossible." The Court exercised fair, reasoned, and impartial judgment in its rulings during Avery's trial, and the Ninth Circuit affirmed each of the Court's rulings that Avery challenged in his direct appeal. For these reasons, to the extent that Avery's § 2255 motion includes a motion for recusal, the motion for recusal is denied.

**(2)    Avery has procedurally defaulted his claim that his conviction violated his Fifth Amendment due process right to a fair and impartial trial**

Avery has procedurally defaulted his claim that his Fifth Amendment due process rights were violated because of judicial bias on the part of the Court. Avery did not raise this claim on direct appeal.[50] He therefore is barred from raising it in his present § 2255 motion unless he "can first demonstrate either 'cause' and actual 'prejudice', or that he is 'actually innocent.'"[51]

Avery asserts ineffective assistance of appellate counsel as an excuse for his failure to raise this issue on direct appeal.[52] To establish ineffective assistance of appellate counsel, Avery must demonstrate under the familiar standard of *Strickland v. Washington*[53]

---

[50] *See United States v. Avery*, CA No. 16-30134, Appellant's Opening Brief, CM/ECF No. 36 (9th Cir. Sept. 27, 2017).

[51] *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 485, 496).

[52] *See* Docket 623 at 7 ("Appointed counsel decided what issues to appeal. If this should have been appealed, then I claim ineffective assistance of appellate counsel.").

[53] 466 U.S. 668 (1984).

that: (1) his counsel's advice fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.[54]

But there is no reasonable probability that Avery would have prevailed on appeal had his counsel raised this issue, and the Court therefore rejects Avery's proffered excuse of ineffective assistance of counsel.[55] The record conclusively establishes that Avery's conviction did not violate his due process right to a fair and impartial trial. The Due Process Clause guarantees criminal defendants the right to "a fair and impartial judge."[56] To establish a due process claim based on judicial bias, a defendant must "overcome a presumption of honesty and integrity in those serving as adjudicators."[57] But as earlier explained, Avery has not demonstrated any evidence of bias or partiality on the part of the Court, let alone bias or partiality from an "extrajudicial source"[58] or bias or partiality of a magnitude that might constitute "deep-seated favoritism or antagonism that would make fair judgment impossible."[59]

For this reason, there was no reasonable probability that Avery would have prevailed on appeal had his counsel raised this issue. Even if it was objectively unreasonable for Avery's counsel not to have raised this issue, any such deficiency did not

---

[54] *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).
[55] *See Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (quoting *Strickland*, 466 U.S. at 697)).
[56] *Larson*, 515 F.3d at 1067.
[57] *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).
[58] *Id.*
[59] *Liteky*, 510 U.S. at 555.

prejudice Avery.  Thus, Avery has not satisfied the *Strickland* standard for ineffective assistance of counsel, and he has no excuse for his failure to raise this issue on direct appeal. Consequently, Avery's judicial-bias due process claim is barred by procedural default.

## B.    Avery's Fifth Amendment Double Jeopardy Right

Avery next asserts that his second trial violated his Fifth Amendment double jeopardy rights because, according to Avery, the evidentiary hearing the Court held in connection with Avery's first § 2255 motion in 2013 was "the equivalent of a court trial on the merits of substantive offenses, during which jeopardy attache[d]."[60]  Avery asserts that in granting his first § 2255 motion on "actual innocence" grounds, the Court "necessarily found me 'factually innocent' of all of the theories of wire fraud, including the ones for which I was tried a second time, leading to the instant judgment."[61]  He concludes that "[w]hen the Government recharged me in 2013 and 2014 for the exact same offenses and the exact same conduct about which I had already proven that I was factually innocent, the Government violated the Fifth Amendment to the U.S. Constitution Double Jeopardy prohibition."[62]

The Government first maintains that Avery's double jeopardy claim is procedurally defaulted.  It secondly asserts that no possibility of a double jeopardy violation existed because of the different elements of the statutes involved, and therefore

---

[60] Docket 623 at 8–9.
[61] *Id.* at 9.
[62] *Id.*

any failure by Avery's appellate counsel cannot have constituted ineffective assistance of counsel.[63]

The Court agrees that Avery has procedurally defaulted this claim. Avery did not raise his double jeopardy claim on direct appeal.[64] He therefore is barred from raising this issue in his present § 2255 motion unless he "can first demonstrate either 'cause' and actual 'prejudice', or that he is 'actually innocent.'"[65]

Avery asserts ineffective assistance of appellate counsel as an excuse for his failure to raise this issue on direct appeal.[66] To establish ineffective assistance of appellate counsel, Avery must demonstrate that: (1) his counsel's advice fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.[67] But the record conclusively shows that there is no reasonable probability that Avery would have prevailed on appeal had his counsel raised this double jeopardy claim. When it vacated and remanded the Court's denial of Avery's first § 2255 motion in 2013, the Ninth Circuit expressly recognized the possibility that "Avery's conduct may still constitute money- or property-based wire fraud."[68] The Ninth Circuit also recognized that the Government might seek a new indictment against Avery after its mandate issued.[69] When the Court vacated Avery's

---

[63] Docket 677 at 27–30.
[64] See *United States v. Avery*, CA No. 16-30134, Appellant's Opening Brief, CM/ECF No. 36 (9th Cir. Sept. 27, 2017).
[65] *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 485, 496).
[66] See Docket 623 at 10 ("Appointed counsel decided what issues to appeal. If this should have been appealed, then I claim ineffective assistance of appellate counsel.").
[67] See *Miller*, 882 F.2d at 1434.
[68] *Avery*, 719 F.3d at 1085 n.3.
[69] See Docket 129 (text entry) (Court of Appeals Notice).

initial conviction, it did so based upon the Government and Avery's joint stipulation that Avery's convictions for honest-services wire fraud and money laundering would be set aside in light of the Ninth Circuit's decision, not because of a conclusion that Avery was innocent of all conceivable forms of wire fraud.[70]

Furthermore, contrary to Avery's assertion, the Court's handling of Avery's first § 2255 motion in 2013 did not constitute a "decision on the merits" that barred subsequent prosecution of Avery for other types of fraud. Avery never was placed in jeopardy during his first habeas evidentiary hearing. Longstanding Supreme Court precedent holds that the Double Jeopardy Clause "does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy."[71] In Avery's evidentiary hearing, the question before the Court was whether he actually was innocent of honest-services wire fraud for the purposes of habeas corpus relief. The Court was not considering whether Avery might have been guilty of money- or property-based wire fraud or bank fraud. There was no possibility that the proceeding could have resulted in Avery being found guilty of those crimes. The Court's determination that Avery actually was innocent of honest services fraud did not acquit him of those other offenses. Consequently, jeopardy did not attach, and the Government was not precluded from

---

[70] *See* Docket 153-1 (Proposed Order); Docket 154 (Minute Entry); Docket 155 (Order). The Government had indicated that it planned to present Avery's case to the next grand jury. *See* Docket 154.
[71] *Serfass v. United States*, 420 U.S. 377, 391–92 (1975) (citation omitted) (quoting *Kepner v. United States*, 195 U.S. 100, 133 (1904)).

seeking a new indictment against Avery. Therefore, Avery's subsequent trial cannot have caused him to suffer double jeopardy.[72]

For these reasons, there is no reasonable probability that Avery might have prevailed on appeal had his counsel raised this issue. Therefore, even if it was objectively unreasonable for Avery's counsel not to have raised this issue, any such deficiency did not prejudice Avery. Thus, Avery has not satisfied the *Strickland* standard for ineffective assistance of counsel, and he has no excuse for his failure to raise this issue on direct appeal. Consequently, Avery's double-jeopardy claim is barred by procedural default.

## C.    Avery's Fifth and Fourteenth Amendment Rights Against Warrantless Seizure and Imprisonment Without Due Process

Avery next asserts that his conviction violated his Fifth Amendment due process rights because the Court lacked proper subject matter jurisdiction over his second criminal prosecution. Avery asserts that when the Court granted his first § 2255 motion and vacated his conviction, he should have been released from prison immediately. Avery claims that by not releasing him or issuing a new arrest warrant, and by having him brought to Alaska, the Court violated his Fourth Amendment right against unlawful seizure and his due process rights under the Fifth Amendment. He accuses the Court of "unlawfully orchestrat[ing] my seizure, imprisonment, and transport," and "execut[ing] the functions of the police officer. Taking me and transporting me without a warrant and against my will is, literally, kidnapping." He asserts that he was forced to endure opprobrious conditions

---

[72] *See id.* at 393 (speaking of "the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy").

such as sleeping on a pad in a prison bathroom due to overcrowding in regular cells, being walked through a public airport while in restraints, and being subjected to long hours of restraint in handcuffs and chains. Avery asserts that these alleged violations of his constitutional rights were so flagrant that they violated his due process rights and deprived the Court of criminal jurisdiction over his subsequent prosecution. As part of his argument, Avery challenges existing precedents holding that such circumstances do not deprive U.S. district courts of criminal jurisdiction over a defendant.[73]

The Government maintains that Avery's assertions constitute an allegation of false imprisonment that are a matter for a civil lawsuit, not grounds for habeas relief. The Government asserts that any claim of Avery's for false imprisonment is time-barred. The Government also disputes Avery's allegations regarding the illegality of his confinement after the Court granted his first § 2255 motion.[74]

In reply, Avery invokes the Court's power to dismiss indictments for flagrant due process violations. He asserts that "[t]he government's effort to keep [me] in custody despite the Ninth Circuit's explicit reversal of the basis for [my] incarceration is the type of misconduct that is contemplated by this principle." He asks the Court to "sanction the government for its outrageous misconduct by granting [my] § 2255 motion."[75]

As an initial matter, Avery has procedurally defaulted this jurisdictional claim. Avery did not raise this jurisdictional argument on direct appeal.[76] He therefore is

---

[73] Docket 623 at 11–13.
[74] Docket 677 at 30.
[75] Docket 683 at 10–14.
[76] See *United States v. Avery*, CA No. 16-30134, Appellant's Opening Brief, CM/ECF No. 36 (9th Cir. Sept. 27, 2017).

barred from raising it in his present § 2255 motion unless he "can first demonstrate either 'cause' and actual 'prejudice', or that he is 'actually innocent.'"[77]

Avery asserts ineffective assistance of appellate counsel as an excuse for his failure to raise this argument on direct appeal.[78] But the record conclusively forecloses this assertion. For more than a century, the Supreme Court has held that "the power of a court to try a person for a crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'"[79] Known as the *Ker/Frisbie* doctrine, this "venerable principle" of the law provides that "the manner by which a defendant is brought to trial does not affect the government's ability to try him."[80] The Ninth Circuit has recognized two limited exceptions to the *Ker/Frisbie* doctrine that apply "if either: (1) the transfer of the defendant violated the applicable extradition treaty, or (2) the United States government engaged in misconduct of the most shocking and outrageous kind to obtain his presence."[81]

The record in Avery's case conclusively establishes a lack of any "misconduct of the most shocking and outrageous kind" that might constitute an exception to the *Ker/Frisbie* doctrine.[82] Under the doctrine's second exception, mandatory dismissal

---

[77] *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 485, 496).
[78] *See* Docket 623 at 14 ("Appointed counsel decided what issues to appeal. If this should have been appealed, then I claim ineffective assistance of appellate counsel.").
[79] *Frisbie v. Collins*, 342 U.S. 519, 522 (1952) (quoting *Ker v. Illinois*, 119 U.S. 436, 444 (1888)).
[80] *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010) (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 762 (9th Cir. 1995)).
[81] *Id.* (internal quotation marks omitted) (quoting *United States v. Anderson*, 472 F.3d 662, 666 (9th Cir. 2006)).
[82] Avery does not attempt to invoke the first *Ker/Frisbie* exception. *See* Docket 623 at 11–13; Docket 683 at 10–14.

of an indictment is required "[w]here the Government's conduct to obtain a defendant's presence is so shocking and outrageous 'as to violate the universal sense of justice.'"[83]  As its language suggests, this exception is a high bar.  For example, the Ninth Circuit has held that the exception was not warranted where a group of U.S. Marshals forcibly abducted a defendant from his home in the middle of the night and subjected him to beatings and stun gun burnings before transporting him back to the United States.[84]

Under this and other precedents, the Government's actions with respect to Avery fall far short of the "misconduct of the most shocking and outrageous kind" required to invoke the exception.  Within days of the Ninth Circuit's order vacating the Court's denial of Avery's first § 2255 motion, the Court ordered the Government to show cause as to why Avery should not be promptly released from prison.  The Government responded in opposition to Avery's release.  After several hearings and the filing of several motions by both parties over the course of more than a month, Avery was released from custody. Even if Avery's allegations regarding the Government's handling of him between the time of the Ninth Circuit's remand of his initial § 2255 are true, they fall far short of the "shocking and outrageous misconduct" exception to the *Frisbie/Ker* doctrine.  As such, there is no reasonable probability that Avery would have prevailed if his appellate counsel had raised this argument on direct appeal.

---

[83] *Struckman*, 611 F.3d at 573 (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991)).

[84] *Matta-Ballesteros*, 71 F.3d at 761–63.

Similarly, there is no reasonable probability that an appeal based on the Court's supervisory powers would have prevailed. Federal courts may dismiss indictments for governmental violations that do not rise to the level of due process violations in certain exceptional circumstances: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."[85] Avery's situation did not satisfy any of these exceptional circumstances. The Court initiated prompt proceedings regarding Avery's motion and his potential release from prison after the Ninth Circuit vacated the Court's initial § 2255 decision. The Government opposed Avery's immediate release from prison based on its "inten[tion] to introduce evidence of uncharged crimes that are not part [of] the record."[86] There is no indication that the Government's opposition constituted flagrant misconduct or was the continuation of past illegal conduct. Thus, an appeal on these grounds would have had no reasonable probability of success.

For these reasons, even if it was objectively unreasonable for Avery's counsel not to have raised this issue on direct appeal, any such deficiency did not prejudice Avery. Avery thus has failed to establish the requisite ineffective assistance of counsel necessary to excuse his failure to raise this issue on direct appeal. Avery's lack-of-jurisdiction claim therefore is barred by procedural default.

---

[85] *Struckman*, 611 F.3d at 574 (quoting *Matta-Ballesteros*, 71 F.3d at 763).
[86] Docket 135 at 2 (Response to Order to Show Cause).

**D.    Avery's Sixth Amendment Right to Effective Assistance of Counsel—S. Dattan**

Avery next asserts that defense attorney Scott Dattan, who represented him in 2006 and 2007 in his original criminal investigation, plea agreement, and sentencing, provided ineffective assistance of counsel by failing to electronically record one of Avery's initial interrogations. Avery asserts that he asked Dattan to record the interrogation, but that Dattan failed to do so. Avery asserts that the Government eventually used information from the interrogation at his trial in 2016. Avery alleges that Dattan's failure to record the interview "le[ft] me with no way to challenge the veracity of the Government's writings purported to be my statements."[87]

The Government maintains that Avery's claim is time-barred because he failed to raise it within one year of the judgment on his original charges. The Government asserts that "the facts of any claim [against Dattan] were present in 2008 and waived. Nor is there any new evidence alleged . . . . Thus, it is barred from being raised here."[88]

In reply, Avery asserts that his claim against Dattan is not time-barred because his ineffective assistance of counsel claim relates only to his second conviction from 2016, not his original conviction from 2007. His reply concludes that "[u]nless the Court determines that Mr. Avery would not be entitled relief even if the facts assumed were true, he should be granted leave to conduct a deposition of Mr. Dattan."[89]

---

[87] Docket 623 at 15.
[88] Docket 677 at 30.
[89] Docket 683 at 14–15.

The Court concludes that the record conclusively establishes that any deficiency in Dattan's decision not to record Avery's interrogation did not prejudice Avery's case. The veracity of the Government's evidence relating to Avery's interrogations did not play a significant role in the Government's case-in-chief or in Avery's defense. In its decision on Avery's direct appeal, the Ninth Circuit concluded that the financial documentary evidence in the case would have allowed "*any* rational trier of fact" to find beyond a reasonable doubt that Avery committed the essential elements of the crimes of which he was convicted.[90]

Furthermore, the jury knew that Avery's interrogations had not been electronically recorded. Avery's trial attorney discussed the lack of independent recordings of Avery's interrogations by the FBI during his cross-examination of the Government's rebuttal witness, Special Agent Matthew Campe, questioning the veracity of Campe's notes and his testimony regarding Avery's admissions in the interviews.[91] Avery's trial attorney also mentioned the lack of electronic recordings of Avery's interrogations in his closing argument to the jury.[92] Nevertheless, the jury found Avery guilty of most of the charges. Thus, the Court summarily concludes that, even if Dattan's alleged omission constituted ineffective assistance of counsel, it did not have any "substantial and injurious effect or influence in determining the jury's verdict."[93] Any hypothetical deficiency in Dattan's representation therefore would be harmless for the

---

[90] *Avery*, 747 F. App'x at 484–85 (emphasis in original).
[91] Docket 563 at 111–14.
[92] *Id.* at 183.
[93] *Montalvo*, 331 F.3d at 1057–58 (emphasis removed) (quoting *Brecht*, 507 U.S. at 623).

purposes of habeas corpus relief.[94]   The Court therefore concludes that the record conclusively establishes that Avery's claim against Dattan is without merit.

### E.   Avery's Sixth Amendment Right to Effective Assistance of Counsel—M. Dieni

Avery next asserts that his trial defense attorney, Michael Dieni, provided him with ineffective assistance of counsel through a host of "inexcusable" mistakes. Following a lengthy recitation of his version of the facts leading up to his conviction, Avery accuses Dieni of failing to file a complaint against FBI agents whom Avery accused of illegal activity, failing to challenge search warrants the FBI obtained for property Avery owned or had access to on the ground that—according to Avery—the FBI had obtained the warrants using falsified evidence, and failing to attempt to use the existence of the FBI's allegedly falsified evidence to impeach the Government's rebuttal witness.

Avery also alleges that he and Dieni "had a communication problem," claiming that Dieni "was verbally abusive" toward him.

> Through most of the representation [Dieni] was verbally abusive and kept trying to convince me to plead guilty.  I asserted my innocence and he became angry.  I was not abusive towards him.  On a number of occasions he swore at me and called me an idiot.  He did this in front of his investigator . . . .  She tried to explain to me "how he was."[95]

Avery alleges that he had been diagnosed with several mental health conditions and had been prescribed medication during preparation for his trial, and that Dieni "made no accommodation for my disabilities in his representation of me."  Avery asserts that "his

---

[94] *Id.*
[95] Docket 623 at 25.

symptoms and behavior patterns were very relevant to my defense," but that Dieni "dismissed it as foolish" and refused to use a mental health professional Avery consulted in his defense strategy. He recounts a litany of specific instances in which he alleges, for example, that Dieni screamed at him, that Dieni refused to challenge an allegedly tainted prospective juror during jury selection, that Dieni refused to investigate certain allegedly exculpatory facts, and other similar allegations. Avery asserts that if not for these alleged mistakes by Dieni, the jury would have found him not guilty on all charges.[96]

In opposition, the Government maintains that Avery's allegations against Dieni are meritless. The Government notes that the FBI searches whose legality Avery challenges were upheld after being scrutinized in an evidentiary hearing in an earlier case, and that therefore it would have been pointless for Dieni to have attempted to challenge them at Avery's trial. The Government points out that the Court questioned the prospective juror Avery alleged to have been tainted, and that both the Court and the parties, including Avery himself, were satisfied with the juror's answers.[97] It also maintains that Avery's psychiatric conditions were irrelevant to his case because they were "not a defense" to the criminal conduct with which he had been charged. The Government maintains that it was objectively reasonable for Dieni to decide not to pursue the other avenues Avery accuses him of failing to pursue because each was irrelevant to Avery's defense.[98]

---

[96] *Id.* at 17–43.
[97] *See* Docket 546 at 10–16 (Tr. Trans., Day 2).
[98] Docket 677 at 31–43.

In habeas proceedings, "[a]n evidentiary hearing is usually required if the motion states a claim based on matters outside the record or events outside the courtroom."[99] In the present case, Avery's allegations against Dieni extensively reference interactions that occurred outside of the courtroom. At present, neither Avery nor the Government have submitted affidavits from Avery or Dieni regarding these allegations. Out of an abundance of caution, the Court concludes that an evidentiary hearing is required at which the parties can introduce relevant evidence on this issue. The evidentiary hearing may, at the parties' option, be held in person, telephonically, or by affidavit. As set out in the conclusion of this order, the Court will hold a Telephonic Scheduling Conference so that the parties may choose an appropriate date for the evidentiary hearing. As the habeas challenger, Avery will bear the burden at the hearing to make the requisite showing under the *Strickland* standard.[100]

## F. Avery's Sixth Amendment Right to Confront Witnesses Against Him

Avery next asserts that his conviction violated his Sixth Amendment right to confront the witnesses against him. Specifically, he alleges that the Court erroneously allowed two witnesses to testify about their "impressions" of out-of-court statements made by two other parties, noting that his defense counsel objected on evidentiary and Sixth

---

[99]  *Burrows*, 872 F.2d at 917.
[100]  *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 104 (2011) ("The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" (quoting *Strickland*, 466 U.S. at 687)); *see also, e.g.*, *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) ("The defendant bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.").

Amendment grounds at trial. Avery asserts that his inability to cross-examine the two other parties violated his right under the Confrontation Clause.[101]

The Government maintains that Avery's claim is defaulted because he raised it both at trial and on direct appeal, where it was rejected on its merits.[102] In reply, Avery asserts that this claim was not raised on direct appeal because his appeal framed the claim of error in terms of evidentiary hearsay rules, rather than as a matter of Sixth Amendment constitutional law. Conceding that he may have failed to raise his Sixth Amendment claim on direct appeal, Avery asserts ineffective assistance of appellate counsel as cause to excuse his procedural default.[103]

A review of Avery's appellate filings reveals that Avery apparently raised his Confrontation Clause arguments on appeal. In the "Summary of Argument" section of his opening brief, Avery framed his claim of error regarding the Court's admission of the two witnesses' "impression" testimony in terms of both evidentiary rules and Sixth Amendment constitutional law:

> The district court's hearsay rulings denied Mr. Avery his due process right to present a defense by limiting his ability to describe the effect on him of [the declarant's] representations, while denying him his right to confront adverse witnesses by admission of 'impressions' about adverse witnesses.[104]

---

[101] Docket 623 at 45–46.
[102] Docket 677 at 44–45.
[103] Docket 683 at 17–18.
[104] *United States v. Avery*, CA No. 16-30134, Appellant's Opening Brief, CM/ECF No. 36, at *13 (9th Cir. Sept. 27, 2017). Avery did not discuss the constitutional aspect of this claim in the body of his brief. *See id.* at *58.

But the Ninth Circuit appears not to have addressed Avery's constitutional argument.[105] Because the Ninth Circuit did not "consider" or "expressly reject" his argument, the Court concludes that Avery is not barred from raising the issue in the present § 2255 motion.[106]

Nevertheless, the record conclusively establishes that Avery's Confrontation Clause right was not violated. The Confrontation Clause prohibits the Government from introducing "[t]estimonial statements of witnesses absent from trial" as evidence against a criminal defendant unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness]."[107] "[N]on-testimonial statements do not implicate the Confrontation Clause."[108] As the Ninth Circuit explained in Avery's direct appeal, no testimonial evidence from the two witnesses in question was ever introduced in Avery's case.[109] Rather, the witnesses who testified at Avery's trial gave "opinion testimony" of their own "impressions" regarding the reactions of the two witnesses in question.[110] No testimony from the other two witnesses was ever presented. Therefore, no violation of Avery's Confrontation Clause right could have occurred.

Moreover, even if such a violation had occurred, it would have been harmless error. The Ninth Circuit concluded in Avery's direct appeal that the other evidence in the case established that "*any* rational trier of fact could have found the essential elements" of

---

[105] *See Avery*, 747 F. App'x at 485.
[106] *See Redd*, 759 F.2d at 701 (speaking of issues an appellate court "expressly reject[s]" being barred on collateral attack); *Egger*, 509 F.2d at 748 (speaking of issues that were "considered" by an appellate court being barred on collateral attack).
[107] *Whorton v. Bockting*, 549 U.S. 406, 413 (2007) (alterations in original) (quoting *Crawford v. Washington*, 541 U.S. 36, 59 (2004)).
[108] *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009).
[109] *Avery*, 747 F. App'x at 485.
[110] *Id.*

Avery's convicted charges "beyond a reasonable doubt."[111]  Because the harmless-error standard for constitutional "trial errors" is lower in habeas proceedings than it is on direct appeal,[112] the Ninth Circuit's decision establishes that the Confrontation Clause error Avery asserts would have been harmless error.

For these reasons, the Court concludes that Avery's assertion that his conviction violated his Sixth Amendment right to be confronted with the witnesses against him is conclusively without merit.

## G.    Avery's Fifth Amendment Right to a Unanimous Verdict

Avery next asserts that his conviction violated his Fifth Amendment due process rights because the Court did not *sua sponte* issue a specific jury instruction on unanimity.  Avery alleges that he was charged with defrauding "May Smith and the May Smith Trust," but that when the case was sent to the jury "neither the court nor the Government clarified whether the charges applied to the May Smith Trust or to May Smith."  Avery asserts that he was "not convicted on a unanimous verdict" because "some of the jurors could have found that I had defrauded May Smith . . . and some could have found that I defrauded the May Smith Trust."[113]

The Government maintains that Avery waived this claim by failing to raise it in an objection at trial.  It further maintains that no specific unanimity jury instruction was needed in Avery's case because of the clarity of the Government's indictment and the

---

[111] *Id.* (quoting *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (per curiam)).
[112] *Brecht*, 507 U.S. at 622–23, 638.
[113] Docket 623 at 47.

"overwhelming" amount of evidence against Avery on the counts of the indictment on which he was convicted.[114]

The Court concludes that Avery has procedurally defaulted his unanimity-charge violation claim. Avery did not raise this issue on direct appeal.[115] He therefore is barred from raising it in his present § 2255 motion unless he "can first demonstrate either 'cause' and actual 'prejudice', or that he is 'actually innocent.'"[116]

Avery asserts ineffective assistance of appellate counsel as a cause for his failure to raise this argument on direct appeal.[117] But the record conclusively refutes Avery's assertion. To establish ineffective assistance of appellate counsel, Avery must demonstrate that: (1) his counsel's advice fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.[118] But there is no reasonable probability that Avery would have prevailed on appeal had his counsel raised this issue. Federal Rule of Criminal Procedure 30(d) provides that "[a] party who objects to any portion of the [jury] instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires

---

[114] Docket 677 at 45–49.

[115] *See United States v. Avery*, CA No. 16-30134, Appellant's Opening Brief, CM/ECF No. 36 (9th Cir. Sept. 27, 2017). Regarding jury instructions, Avery's direct appeal challenged only the Court's deliberate-ignorance instruction and its refusal to incorporate a good faith defense in its specific-intent instruction. *See id.* at *33–38, *39–49. The Ninth Circuit concluded that the jury instructions were proper. *Avery*, 747 F. App'x at 484.

[116] *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 485, 496).

[117] *See* Docket 623 at 48 ("Appointed counsel decided what issues to appeal. If this should have been appealed, then I claim ineffective assistance of appellate counsel.").

[118] *See Miller*, 882 F.2d at 1434.

to deliberate."  Rule 30(d) also provides that "[f]ailure to object in accordance with this rule precludes appellate review," except for plain errors that affect substantial rights.[119]

In this case, Avery did not raise a unanimity objection to the jury instructions at trial,[120] nor did he request a specific unanimity instruction in his proposed jury instructions.[121]  Therefore, Avery only could have prevailed on appeal by arguing plain error.  A federal appellate court has the discretionary power to correct a forfeited plain error "so long as the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"[122]  "An error is plain if it is contrary to the law at the time of appeal."[123] And an error affects substantial rights "if the defendant can 'demonstrate a reasonable probability that [he] would have received a different sentence if the district court had not erred.'"[124]

The lack of a specific unanimity instruction in Avery's case would not have constituted plain error.  At the close of Avery's trial, the Court gave the jury a standard general unanimity charge:  "Your verdict, whether guilty or not, must be unanimous."[125]

---

[119]  *See* Fed. R. Crim. P. 30(d) & 52(b).
[120]  *See* Docket 543 (Trans. of Final Pre-Trial Conference); Docket 563 at 220–29 (Tr. Trans., Day 12).
[121]  *See* Docket 388 (Def.'s Proposed Jury Instructions).
[122]  *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc) (internal quotation marks omitted) (quoting *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc)).  Contrary to the Government's memorandum, the Supreme Court has rejected the older "miscarriage of justice" standard for forfeited plain errors as overly narrow.  *See, e.g.*, *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018).
[123]  *Id.* at 1234 (internal quotation marks omitted) (quoting *Ameline*, 409 F.3d at 1078).
[124]  *Id.* (alteration in original) (quoting *United States v. Joseph*, 716 F.3d 1273, 1280 (9th Cir. 2013)).
[125]  Docket 563 at 228; *see also id.* at 228–29 ("After you've reached unanimous agreement on all the verdicts . . . . It is important that you attempt to reach a unanimous verdict . . . . On the day you reach a verdict . . . you should have your foreperson date and sign the verdict form unanimously agreed upon by your members . . . .").

"Ordinarily, the 'general unanimity instruction suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict.'"[126] However, "[a] specific unanimity instruction is necessary 'where it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed . . . acts' consisting of different legal elements."[127]

In Avery's case, there was no genuine possibility that different jurors concluded that Avery committed different acts. Avery's indictment clearly described the acts for which he was charged with money- or property-based wire fraud.[128] The indictment specified the dates involved and the amounts of money that formed the basis of the acts constituting the basis of each count.[129] The jury's verdict forms also clearly specified the transactions upon which each count of the indictment was based.[130] The Court polled the jury after the verdicts were delivered, and each juror indicated that the verdicts were their true verdicts.[131] The only substantive legal question the jury submitted to the Court during their deliberations related to the definition of "acting knowingly."[132] There was no indication that the jury was confused about whom Avery's wire fraud targeted, nor

---

[126] *United States v. Mancuso*, 718 F.3d 780, 792–93 (9th Cir. 2013) (quoting *United States v. Lyons*, 472 F.3d 1055, 1068 (9th Cir. 2007)).

[127] *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 985 (9th Cir. 2020) (internal quotation marks omitted) (second alteration in original) (quoting *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989)).

[128] *See* Docket 220 at 1–11 (First Superseding Indictment).

[129] *See* Docket 220 at 1–11.

[130] *See* Dockets 461-1 through 461-16 (Jury Verdict Forms).

[131] Docket 566 at 20–23 (Tr. Trans., Day 15).

[132] *See id.* at 3–11.

that jurors might have concluded that Avery committed acts consisting of different legal elements. The Government's case did not rely on multiple theories regarding Avery's wire fraud charges, nor was the case so "factually complex" that jury confusion was likely to occur.[133] For these reasons, no specific unanimity instruction was required.

Avery cites to the Ninth Circuit's recent decision in *United States v. Miller*[134] to support his arguments, but *Miller* is both inapposite and inapplicable to his case. First, *Miller* is inapposite because it held only that the wire fraud statute requires the Government to prove that a defendant intended to both deceive *and* cheat a victim, not merely deceive *or* cheat them.[135] *Miller*'s holding did not relate to whether the intent must have been directed toward a single victim in particular.[136] Second, even if *Miller* had held so, the *Miller* decision was issued more than four years after Avery's trial and more than a year after his appeal became final. As such, *Miller* was not "the law at the time of [Avery's] appeal,"[137] and it therefore would not have made the Court's decision constitute plain error even if Avery's interpretation of it were correct.

Furthermore, there is no reasonable probability that a hypothetical plain error regarding a lack of specific unanimity instruction affected Avery's substantial rights. As the Ninth Circuit concluded in Avery's direct appeal, the evidence the Government

---

[133] *See Anguiano*, 873 F.2d at 1320 & n.4.
[134] 953 F.3d 1095 (9th Cir. 2020).
[135] *Id.* at 1101–03.
[136] *See id.*
[137] *Depue*, 912 F.3d at 1234 (quoting *Ameline*, 409 F.3d at 1078).

adduced at trial was sufficient to allow "*any* rational trier of fact" to find Avery guilty of the essential elements of wire fraud beyond a reasonable doubt.[138]

For these reasons, the Court concludes that there is no reasonable probability that Avery would have prevailed had his counsel raised this unanimity instruction argument on direct appeal. Consequently, even if it was objectively unreasonable for Avery's counsel not to have raised this issue, any such failure did not prejudice Avery. Avery thus has failed to establish the requisite ineffective assistance of counsel necessary to excuse his failure to raise this issue on direct appeal. Avery's unanimity instruction claim therefore is barred by procedural default.

## H. Avery's Fifth Amendment Due Process Rights and the Constitutionality of the Jencks Act and Federal Rule of Criminal Procedure 16

Avery's final assertion is that both the Jencks Act[139] and Federal Rule of Criminal Procedure 16 violate the Fifth Amendment's Due Process Clause.

> Under the current discovery laws and the Jencks Act, there is no way for a defendant to investigate whether or not the government violated the defendant's constitutional rights. Everything is secret. . . . I have a right, as a criminal defendant, to investigate the government's activities. The Jencks Act is no longer viable with the level of secret investigations being prosecuted in this country.[140]

Alleging a "high probability that government relied on provisions of the . . . PATRIOT Act" to prosecute him, Avery asserts that the Jencks Act and Rule 16's provisions inhibited

---

[138] *Avery*, 747 F. App'x at 484–85.
[139] 18 U.S.C. § 3500.
[140] Docket 623 at 49.

his ability to prove his innocence.[141]  The Government opposes Avery's arguments on the grounds of procedural default and lack of supporting evidence.[142]

The Court concludes that Avery's claim is procedurally defaulted.  Avery did not raise his constitutional challenges to the Jencks Act and Rule 16 on direct appeal.[143] He therefore is barred from raising it in his present § 2255 motion unless he "can first demonstrate either 'cause' and actual 'prejudice', or that he is 'actually innocent.'"[144]

Avery asserts ineffective assistance of appellate counsel as an excuse for his failure to raise this issue on direct appeal.[145]  But such an assertion is conclusively without merit.  Regarding Congress's authority to enact the Jencks Act, the Supreme Court has held that the Act "does not reach any constitutional barrier."[146]  Furthermore, other federal courts have consistently rejected due process challenges to the constitutionality of the Jencks Act and Rule 16.[147]  The likelihood of success on appeal on these grounds was so remote that any deficiency in Avery's appellate counsel's decision not to raise this argument on appeal cannot have prejudiced Avery.  Avery therefore has failed to establish ineffective assistance of counsel, and he cannot excuse his failure to raise this argument on

---

[141] *Id.*

[142] Docket 677 at 49–51.

[143] *See United States v. Avery*, CA No. 16-30134, Appellant's Opening Brief, CM/ECF No. 36 (9th Cir. Sept. 27, 2017).

[144] *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 485, 496).

[145] *See* Docket 623 at 50 ("Appointed counsel decided what issues to appeal.  If this should have been appealed, then I claim ineffective assistance of appellate counsel.").

[146] *Palermo v. United States*, 360 U.S. 343, 353 n.11 (1959); *see also, e.g.*, *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) ("The Supreme Court upheld the Jencks Act in *Palermo* . . . .").

[147] *See, e.g.*, *United States v. Rodriguez*, 539 F. Supp. 2d 592, 599 (D. Conn. 2008); *United States v. Owens*, 933 F. Supp. 76, 84 (D. Mass. 1996); *United States v. Til*, No. 2:13 CR 68, 2018 WL 11879704, at *1 (N.D. Ind. Sept. 19, 2013); *United States v. O'Reilly*, No. 05-80025, 2007 WL 2421488, at *2 (E.D. Mich. Aug. 23, 2007).

direct appeal. For these reasons, Avery's due process claim challenging the Jencks Act and Rule 16 is barred by procedural default.

## V.   CERTIFICATE OF APPEALABILITY

Regarding Claims 1–4 and 6–8 of Avery's *pro se* § 2255 motion, the Court concludes that a Certificate of Appealability is not warranted. Federal law prohibits appeals from denials of § 2255 motions unless a Certificate of Appealability first has been issued.[148] A Certificate of Appealability may issue only if "the applicant has made a substantial showing of the denial of a constitutional right."[149] To make such a showing, a habeas petitioner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[150]

Based on its analysis of Claims 1–4 and 6–8 of his *pro se* § 2255 motion, the Court concludes that Avery has not made a substantial showing of a denial of a constitutional right. In the Court's view, reasonable jurists could not disagree with the Court's resolution of these claims, nor could they conclude that the issues he raises are "adequate to deserve encouragement to proceed further."[151] Therefore, pursuant to 28 U.S.C. § 2253(c), a Certificate of Appealability shall not issue regarding these claims.[152]

---

[148] 28 U.S.C. § 2253(c)(1).
[149] 28 U.S.C. § 2253(c)(2).
[150] *Towery v. Schriro*, 641 F.3d 300, 311 (9th Cir. 2010) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).
[151] *Id.* (quoting *Slack*, 529 U.S. at 484).
[152] If the upcoming evidentiary hearing results in the Court denying Claim 5 of Avery's motion, the Court will make a supplemental ruling on a Certificate of Appealability regarding that claim.

# VI.   CONCLUSION

For the foregoing reasons, the Court concludes that Claims 1, 2, 3, 7, and 8 of Avery's *pro se* § 2255 motion are procedurally defaulted and cannot be raised or considered on collateral attack.  The Court also concludes that Claims 4 and 6 of Avery's *pro se* motion are conclusively without merit, and they therefore are denied.  Regarding Claim 5 of Avery's *pro se* motion, the Court concludes that an evidentiary hearing is warranted.

**IT IS THEREFORE ORDERED THAT:**

1.      Claims 1, 2, 3, 4, 6, 7, and 8 of Avery's *pro se* § 2255 motion at Docket 623 are DENIED.

2.      The parties shall attend a telephonic scheduling conference on **Tuesday, February 14, 2023, at 9:30 a.m.**, for the purpose of scheduling an evidentiary hearing on the merits of Claim 5 of Avery's *pro se* motion.  Participating parties shall attend by calling (571) 353-2301, Call ID 218615303, PIN 867901, from a landline telephone five minutes prior to the start of the hearing.

At the scheduling conference, the parties should be prepared to discuss whether they want the evidentiary hearing to be held in person, telephonically, or by affidavit.

IT IS SO ORDERED this 12th day of January, 2023, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*United States v. Avery*                                                          Case No. 3:07-cr-00028-RRB
Supplementary Order on § 2255 Motion to Vacate Sentence                                      Page 36
Case 3:07-cr-00028-RRB   Document 684   Filed 01/12/23   Page 36 of 36